543 So.2d 1084 (1989)
Calvin R. SMILEY and Janice W. Smiley, Plaintiffs-Appellants,
v.
Terry Lynn SIKES, J.F. Haney, Potashnick Construction Co., Inc., and State of Louisiana Department of Transportation and Development, Defendants-Appellees.
No. 20,497-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1989.
Sam N. Gregorio, Shreveport, for plaintiffs-appellants.
Terry Lynn Sikes, pro. per.
Lunn, Irion, Johnson, Salley & Carlisle by Charles W. Salley, James A. Mijalis, Shreveport, for defendants-appellees Potashnick Const. Co. and Aetna Cas. and Sur. Co.
Booth, Lockard, Politz, Lesage and D'Anna by Nyle Anthony Politz and Louisiana Dept. of Justice by David R. Haymon, John William King, Baton Rouge, for defendant-appellee Louisiana Dept. of Transp. and Development.
Before HALL, C.J., and MARVIN and HIGHTOWER, JJ.
HIGHTOWER, Judge.
This appeal involves a tragic accident in which a motorist drove around a barricade at the entrance to an unopened roadway, *1085 proceeded on his way, and subsequently struck and killed two teenagers on the roadway. The parents of one of the teenagers, Kelly Smiley, brought this action.
The most significant issue presented is whether Kelly was contributorily negligent. Since the accident occurred prior to Louisiana's adoption of comparative negligence, the jury's finding of contributory negligence barred recovery against three of the defendants. The trial judge, who heard the case against the State of Louisiana, also found adversely to appellants. For the reasons discussed below, we affirm the judgment rendered which dismissed the suit against all defendants.

FACTS
At approximately 10:22 p.m. on July 17, 1980, defendant, Terry Lynn Sikes, drove a 1976 Ford van around a barricade at the Jewella Avenue entrance to an unopened section of the Innerloop Expressway (La 3132) construction project in Shreveport. The roadway, consisting of two eastbound and two westbound lanes separated by a median, was virtually complete except for striping, signs and cosmetic work. The record clearly reflects that vehicles were occasionally using the unopened section of roadway. Sikes, who admitted to consuming two beers at a restaurant prior to driving that night, was traveling in an easterly direction at 70-75 miles per hour prior to the accident. He stated that, upon noticing something in the roadway ahead, he initially was not aware of the nature of the object. He testified that as he came closer he saw two heads "pop up" and then two people, who had either been sitting or lying "in the middle of the street," attempted to get up and run. Sikes steered his van to the left and applied his brakes, but was unable to avoid striking the two individuals. Killed by the impact were 16-year-old Kelly Smiley and 18-year-old Tommy Freeman. At approximately 11:55 p.m., Sikes was found to have .03 percent alcohol in his blood.
A vehicle driven by Donny York was five or six seconds behind the Sikes van. York had also gone onto the Innerloop at the Jewella entrance and then proceeded to drive down the middle of the eastbound roadway. Except for a few seconds when Sikes passed over the Mansfield Road overpass, York could see Sikes' taillights ahead. He saw the brake lights come on and Sikes' vehicle simultaneously move to the left, then to the right, and then come to a stop back toward the left side of the road. York testified Sikes' vehicle appeared to be on the paved portion of the road when the brake lights came on. Immediately after the accident, Sikes spontaneously stated to York that the two people had been lying or sitting down. It was extremely dark at the area where the fatal accident occurred, according to York.
At approximately 8:30 p.m., roughly two hours prior to the accident, Dave Vosbury also was traveling on the same unopened section of the Innerloop, except that he was going in a westerly direction on the westbound side. As he crossed the Mansfield Road overpass, several hundred yards from the accident site, he noticed a young couple sitting in the road. They were in the middle of the right-hand westbound lane, while he was in the left-hand lane. It was "dusky dark" at that time, but Vosbury was able to identify a boy with shoulder-length blonde curly hair, and a girl, both of whom he estimated to be 15-17 years old. Notably, Tommy Freeman had shoulder length blonde hair. He and Kelly Smiley had been "going together" since she was age 13. The boy Vosbury saw was lying on his right side propped up on his right elbow and facing east, while the girl was sitting about even with the boy's waist and facing south as if talking to him. They did not seem to be startled by Vosbury, and made no effort to get out of the roadway. Vosbury stated that, had they been in the left-hand lane, he did not think he could have stopped in time to avoid hitting them.
Four expert witnesses testified with regard to the location of the point of impact. Dr. George McCormick, Caddo Parish Coroner, was of the opinion that Kelly was on the black-topped apron or side of the road when she was hit by the right front of the Sikes vehicle. Ray Herd, the Director of *1086 the Northwest Louisiana Crime Lab, concluded that she was hit on the dividing line between the shoulder of the road and the concrete, or within a foot, one way or the other, of that line. On the other hand, Dr. Ned Walton, an expert in highway design, traffic engineering, and accident reconstruction, stated that the point of impact was within the left traffic lane, and probably closer to the middle than to the edge. Dr. Walton also testified that, considering the frequency with which traffic used the unilluminated closed roadway, it was highly dangerous for pedestrians to be on or adjacent to the roadway at night. The remaining expert witness, Dr. John Glennen, also an authority in highway design, traffic engineering and accident reconstruction, placed the point of impact at approximately the center of the left-hand lane, plus or minus a foot. Dr. Glennen, like Dr. Walton, expressed the view that it was highly dangerous for pedestrians to be on or near the roadway late at night.
Although uninsured, Sikes was named as a defendant, it being asserted that he negligently caused the girl's death. The other defendants were the State of Louisiana, Department of Transportation and Development, as owner of the road; Potashnick Construction Company, Inc., as general contractor for the construction project; and the contractor's insurer. It was contended that the contractor and the state were negligent in improperly barricading the entrance to the road, and also strictly liable in creating an unreasonable risk of harm under LSA-C.C. Art. 2317.
Plaintiffs demanded trial by jury. However, since a jury trial is unavailable against the State, LSA-R.S. 13:5105, the trial was bifurcated. The judge acted as trier of fact with regard to the liability of the State, while the jury decided the case as to the remaining defendants. At the conclusion of the trial, the judge found that plaintiffs had not proven that the State was negligent, nor that it had created an unreasonable risk of harm. The judge further found, in the event an appellate court disagreed with him regarding the State's liability, that Kelly Smiley was not contributorily negligent.
The jury found Sikes to be negligent, but that Potashnick was neither negligent nor created an unreasonable risk of harm. The jury further found, contrary to the trial judge's opinion, that Kelly Smiley was contributorily negligent and that her negligence was a cause of the accident.
Where there is evidence before the trier of fact which, upon reasonable evaluation of its credibility, furnishes a reasonable basis for factual findings, on review those findings should not be disturbed by an appellate court in the absence of manifest error. See Allen v. Burrow, 505 So.2d 880 (La.App. 2d Cir.1987), writ denied, 507 So.2d 229 (La.1987); Belk v. Montgomery Ward and Co., Inc., 501 So.2d 1008 (La. App. 2d Cir.1987). In the present case we find no manifest error in the conclusions of either the jury or the judge that the contractor and State were not negligent and did not create an unreasonable risk of harm. No contention is made that the jury erred in finding Sikes negligent.

CONTRIBUTORY NEGLIGENCE OF KELLY SMILEY
Act 431 of 1979 amended LSA-C.C. Art. 2323 to introduce the concept of comparative negligence and, in so doing, repudiated contributory negligence as a complete bar to recovery in Louisiana. However, that amendment did not become effective until August 1, 1980. Because the accident in this case occurred on July 17, 1980, contributory negligence on the part of Kelly Smiley barred recovery by plaintiffs. See McDermott v. Jester, 466 So.2d 795 (La.App. 4th Cir.1985), writ denied, 468 So.2d 576 (La.1985).
For obvious reasons then, we reject plaintiffs' assertion that the trial court erred in failing to instruct the jury that comparative negligence rather than contributory negligence was applicable. While plaintiffs' argument in favor of comparative negligence was made in connection with their theory of strict liability under LSA-C.C. Art. 2317, that theory of recovery was rejected by both the jury and the trial judge. Implicit in that rejection is a *1087 finding that the accident in this case was not the result of a defective roadway. Furthermore, as subsequently discussed, contributory negligence on the part of Kelly Smiley also acted as a bar to recovery under Art. 2317.
Contributory negligence is a question of fact upon which the trier of fact's determination will not be disturbed on appeal absent manifest error. Garsee v. Western Casualty & Surety Co., Inc., 437 So.2d 933 (La.App. 2d Cir.1983), writ denied, 440 So.2d 762 (La.1983). The testimony of the witnesses discussed above shows that the jury was not clearly wrong in finding Kelly contributorily negligent, and indeed had before it a sound factual basis upon which to so conclude.
Sikes, through his testimony, placed the girl on the roadway when she first became visible and even at the time of impact. That testimony was corroborated to some extent by York, who saw Sikes' brake lights come on at approximately the same time Sikes' vehicle veered to the left. York's testimony indicated that Sikes saw something in the road and tried to avoid hitting it. Had the two teenagers been on the shoulder of the road, there would have been no reason for Sikes to make this maneuver. Furthermore, York's testimony is consistent with the conclusions of the accident reconstruction experts, Dr. Walton and Dr. Glennen, both of whom placed the point of impact near the middle of the left-hand lane of the roadway. In addition to stating that the road was a highly dangerous place for pedestrians given the circumstances, Drs. Walton and Glennen also testified that the two teenagers could have seen the lights of the Sikes' vehicle approximately eight to ten seconds prior to impact, and thus had ample time to get off the roadway and to safety.
Neither was the jury's conclusion clearly wrong as a result of testimony by the other two expert witnesses who placed the point of impact on the shoulder of the road. We also note that the jury's conclusion is rational irrespective of whether the teenagers were lying, sitting or standing in the roadway prior to the accident.
Moreover, the "clearly wrong" or manifest error standard is applicable to the jury's determination notwithstanding the opposite conclusion reached by the judge concerning the contributory negligence of Kelly Smiley. The trial court's finding, which exonerated the State, made it unnecessary for the judge to consider contributory negligence. Thus, his opinion in this regard was mere dictum,[1] as is reflected by the fact that the judgment dismisses plaintiffs' suit against all defendants. Inasmuch as the trial judge's opinion on contributory negligence was dictum, it did not abrogate application of the manifest error standard to the jury's decision on contributory negligence.
Nevertheless, even without the manifest error standard, the weight of the evidence is that Kelly Smiley was contributorily negligent, and that her negligence was a legal cause of the accident. Moreover, we would *1088 so find upon adjudicating the appeal as an independent review of the evidence by this court. See Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975)
Our affirmance of the jury's finding that Kelly Smiley was contributorily negligent makes it unnecessary to further discuss several of the remaining issues briefed by plaintiffs. In particular, inadequate barricading at the Jewella Avenue entrance, even if assumed arguendo, would not negate the effect of contributory negligence. Fault of the victim is a defense to strict liability under Art. 2317. Loescher v. Parr, 324 So.2d 441 (La.1975). Pre-comparative cases involving allegedly defective roadways have equated contributory negligence with victim fault, and have barred recovery by plaintiffs whose own negligence was a cause-in-fact of the resulting harm. See Thomas v. Jackson, 442 So.2d 1186 (La.App. 2d Cir.1983), writ denied, 445 So.2d 435 (La.1984); Edwards v. State Dept. of Transportation and Development, 403 So.2d 109 (La.App. 3rd Cir.1981).
Plaintiffs also assign as error that the trial judge refused to allow their expert to be questioned about safety provisions in the construction contract. As shown by their brief, this contention pertains to a duty/risk analysis of the claim to which we have sustained the contributory negligence defense.
Plaintiffs' argument that the trial court erred in instructing the jury on assumption of the risk is likewise unpersuasive. Assumption of the risk was distinguishable from contributory negligence and recognized as a separate defense, although admittedly difficult to apply at times, prior to the adoption of comparative negligence. See Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988). Moreover, we do not agree with plaintiffs' assessment that no evidence existed indicative of the knowledge of Kelly Smiley concerning the hazards of being on this roadway.
While we have every sympathy for the parents of Kelly Smiley, who have experienced a tragic loss, our review of the legal and factual circumstances of this case requires us to affirm the judgment herein at appellants' costs.
AFFIRMED.
HALL, Chief Judge, concurring:
I concur in the holding of the majority opinion that neither the contractor nor the state was at fault and that Kelly Smiley was contributorily negligent. This concurring opinion is written to express some disagreement with expressions in the majority opinion concerning the standard of review of the conflicting findings of the jury and the trial judge on contributory negligence.
The majority opinion applies the clearly wrong or manifest error standard of review to the jury verdict but not to the trial judge finding because the jury was required to make a finding on the contributory negligence issue in connection with plaintiffs' claim against Sikes, the jury having found Sikes negligent, whereas it was unnecessary for the judge to pass on this issue since the judge found the state without fault.
The action against Sikes is not on appeal. The actions on appeal are the claims against the contractor and the state, and in each action the trier of fact found no fault on the part of the defendant. Thus, as to the actions now before this court, it was not necessary for either trier of fact to pass on the contributory negligence issue, but each did and each finding is entitled to equal weight.
The possibility of different decisions on the same point by judge and jury in bifurcated trials is always present, but disparate results can be resolved in the trial court by judgment notwithstanding the verdict or new trial and by the appellate court under its authority to review findings of fact of both judge and jury. Lemire v. New Orleans Public Service Inc., 458 So.2d 1308 (La.1984); Jones v. City of Kenner, 338 So.2d 606 (La.1976); Champagne v. American Southern Insurance Co., 295 So.2d 437 (La.1974).
The standard of review by the appellate court in cases where different conclusions are reached by judge and jury in a bifurcated *1089 trial was discussed in Williams v. City of New Orleans, 433 So.2d 1129 (La.App. 4th Cir.1983), as follows:
"In Thornton v. Moran, 343 So.2d 1065 (La.1977) the Louisiana Supreme Court instructed the appellate courts, in situations such as this, "to resolve the differences in the factual findings between the jury and the judge ... and to render a single opinion based upon the record." The Supreme Court mandate did not provide a standard of review and the different circuit courts have not chosen the same standard. The First Circuit has chosen a "more reasonable measurement" standard, that is, which of the triers of fact reached the more reasonable conclusion. Thornton v. Moran, 348 So.2d 79 (La.App. 1st Cir.1977); writs refused 350 So.2d 897 ("No error of law."), 898 ("The result is correct.") and 900 ("The result is correct.") (La.1977). The Fourth Circuit reasoned, in a later case,
On appeal neither trier of fact is entitled to have greater weight accorded to its factual findings. Therefore, it is necessary for the appellate court to make its own independent factual findings based on the record, without according any weight to the factual findings of either the judge or the jury when those findings are inconsistent. (footnote omitted). Aubert v. Charity Hospital of Louisiana, 363 So.2d 1223 (La.App. 4th Cir.1978), writ denied 365 So.2d 242 (La.1978).
In Deville v. Town of Bunkie, 364 So.2d 1378 (La.App. 3d Cir.1978) writ denied, 366 So.2d 564 (La.1979), the approach of the Third Circuit is more in line with the "more reasonable" standard. The Third Circuit, however, cites Thornton v. Moran, supra, and Aubert v. Charity Hospital of Louisiana, supra, as authority for its approach.
Although aware of this divergence of views, we presently feel bound to follow that standard previously enunciated by this court in Aubert v. Charity Hospital of Louisiana, supra, i.e., to make our "own independent factual findings based on the record, without according any weight to the factual findings of either the judge or the jury when those findings are inconsistent."
There is little or no difference between the standards of review discussed in the cases cited above since each requires an independent determination by the appellate court based on the record. The manifest error or clearly wrong standard should not be applied to either the jury verdict or the judge finding as opposed to each other.
Based on an independent review of the record evidence, I agree with the conclusion that Kelly Smiley's negligence was a contributing cause of the accident and bars plaintiffs' action against the contractor and the state. I also agree with the findings of both judge and jury that there was no fault on the part of either of these defendants, to which consistent findings the manifest error or clearly wrong standard of review does apply.
NOTES
[1] Ordinarily, when the judge and jury in a bifurcated proceeding reach opposite factual findings, both conclusions are on the same footing and neither is entitled to greater weight. This principle, however, assumes that both conclusions are necessary to achieve a determination of the case. A necessary conclusion is a required holding. An unnecessary conclusion is dictum. See DuBell v. Union Central Life Ins. Co., 29 So.2d 709, 211 La. 167 (1947); Caldwell v. Shipp, 448 So.2d 810 (La.App. 2d Cir.1984).

The trial judge's dictum lacks the force of an adjudication in this case, and is not entitled to parity with the jury's required holding. Having determined that the State was not liable, it was unnecessary for the judge to proceed to consider the affirmative defense of contributory negligence. Nor can it be said that the trial judge's conclusion was an additional or alternative finding which reinforced exoneration of the State. Instead, the conclusionthe absence of contributory negligencewould point in an opposite direction.
Furthermore, the jury's decision on contributory negligence was necessary vel non depending upon whether it, the jury, found at least one defendant negligentnot upon whether a finding of negligence on the part of either defendant was later appealed. Certainly, dicta is not determined on the basis of which party appeals. Conversely, of course, had the jury found neither Sikes nor the contractor negligent and yet proceeded, in disregard of instructions, to make a finding in relation to contributory negligence, such a finding would be dictum.