618 So.2d 436 (1993)
Victoria MAYORAL, et al., Plaintiffs/Appellants,
v.
MIDDLE SOUTH UTILITIES, et al., Defendants/Appellees.
No. 92-CA-1110.
Court of Appeal of Louisiana, Fifth Circuit.
April 27, 1993.
*437 Dominic J. Ovella and Valerie T. Schexnayder, Metairie, for plaintiffs/appellants.
George F. Riess, Nora F. McAlister and Ann E. Levine, New Orleans, for defendant/appellee.
Before BOWES, GAUDIN and WICKER, JJ.
WICKER, Judge.
Victoria and Rene Mayoral, the husband and wife plaintiffs, appeal a summary judgment dismissing their claims against defendant Louisiana Power and Light Company (LP & L). The issue is the liability of a utility company for a pole on the right of way. We reverse and remand.
The Mayorals were driving west on U.S. Highway 61, Airline Highway. A sudden swerve from the left by a car in an adjacent lane caused Mr. Mayoral to take evasive action, and he crashed into a utility pole. Both he and his wife were injured. The swerving vehicle apparently disappeared.
Mr. and Mrs. Mayoral sued Middle South Utilities, Inc.; its subsidiary LP & L; the State of Louisiana, Department of Transportation and Development (DOTD); and Jefferson Parish. The parish has since been dismissed from the suit on joint motion of it and the Mayorals. DOTD cross-claimed against LP & L on the basis of an alleged indemnity contract between them.
LP & L moved for summary judgment on the basis that its pole was not a cause in fact of the accident. A judge denied the motion, and LP & L did not appeal the denial. The judge who rendered that decision was later elected to the appellate court.
LP & L then re-urged its motion for summary judgment on the basis that its pole was not a cause in fact of the accident and it had no prior knowledge of accidents at this location. DOTD joined the Mayorals in opposition to the summary judgment, DOTD's having since filed its cross claim; and a different judge granted the motion. She ruled that the location of LP & L's utility pole was not a cause in fact of the Mayorals' accident and did not create an unreasonable risk of harm, citing Roux v. L.P. & L. Co., 597 So.2d 118 (La.App. 5th Cir.1992), since reversed by the Supreme Court, 604 So.2d 1299 (1992). She added that LP & L owed no duty regarding the location of its pole under the circumstances of this case.
The Mayorals argue on appeal that there are three factual issues which should not have been resolved by summary judgment: whether the utility pole's placement was a cause in fact of the accident, whether the lack of a guard for the pole either was a cause in fact of the accident or increased the severity of their injuries, and whether the placement of the utility pole constituted an unreasonable risk of harm. LP & L argues that it owed no legal duty to the Mayorals, the existence of a duty is a legal question appropriate for resolution by a judge on summary judgment, and the cause in fact of the accident was Mr. Mayoral's failure to maintain control of his car after swerving. DOTD has not appealed.
Summary judgment is not a substitute for trial and is properly granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to the material fact, and that mover is entitled to judgment as a matter of law." La.C.Civ.P. art. 966; Gatlin v. Coca-Cola Co., 461 So.2d 452 (La.App. 5th Cir.1984). If there is any doubt concerning an allegedly disputed material fact, that doubt should be resolved against granting summary judgment....
McCrossen v. Renovate, Inc., 548 So.2d 92, 94 (La.App. 5th Cir.1989). "The pleadings, affidavits, and documents of the mover must be scrutinized closely, while those of the opponent to the motion are to be indulgently treated...." Industrial Sand and Abrasives v. L. & N.R. Co., 427 So.2d 1152, *438 1154 (La.1983), cited in Andras v. Maintenance Coastal Sales & S., 572 So.2d 335 (La.App. 5th Cir.1990).
Pleadings, including answers to interrogatories, and depositions form the body of evidence. The pole belonged to LP & L and was erected by LP & L in 1966 two feet beyond the shoulder of the road on the highway right of way, a total of eight feet from the highway. The intersection, where Little Farms Avenue meets Airline Highway, generates traffic of 36,824 vehicles per day [as of a traffic study in 1984], with 240 vehicles per hour turning left from Airline onto Little Farms. Nineteen accidents in 1984 and twenty-seven in 1983 occurred at that intersection. LP & L alleges that there have been no accidents involving this pole, but it admits that it cannot legitimately furnish an affidavit to this effect.
Olin K. Dart, Jr., the Mayorals' expert, was deposed; and both sides offer portions of this deposition in support of their respective positions. Dart, using AASHTO standards which went into effect in the seventies, found two defects in the intersection: placement and guarding of the utility pole, and the type of traffic signal. Only the former is relevant to this proceeding, since LP & L has no responsibility for the traffic signals on Airline Highway. He testified that AASHTO standards suggest that utility poles be a minimum of fifteen feet from the highway. Anything within that distance should be protected by a barrier designed to prevent a car from hitting the concrete base of the pole. The barrier's purpose is to deflect the vehicle along the barrier, resulting in less serious injury to passengers. The concept of using barriers originated in 1967, but there were no published guidelines until the AASHTO standards in 1977. Dart responded to a question concerning causation of the accident:
Obviously there's a driver element in this as well depending on how you interpret what Mr. Mayoral says. In the deposition, he indicates that he glanced or at least looked towards his wife just before this happened, but he did say in his deposition that he still was maintaining looking down the road.
I don't know if there's any element of his inattention or not. I don't know if he could have seen or done anything if he had not been talking to his wife at that moment, but he did see a car pull out. He says the second car of a line of five, so he must have been watching reasonably close to note those details.
Obviously the car that pulled out in front of him, which remains unidentified, has the greater fault in a [illegible] in that they did not look to see that someone was coming when they pulled out to get around the left turning vehicle. That's the precipitant cause of the accident. Mr. Mayoral, driving defensively in the situation he was in figuring a collision, took an avoidance maneuver, which unfortunately brought him into contact with a pole.
So the precipitating cause of the accident is the lane change by the unidentified vehicle and the consequences of the accident are the collision with the pole. Of course, as I already stated, the reason the queue is there which led to the lane change was the lack of a turn lane and/or signal.
On cross examination Dart admitted that the AASHTO standards were prospective. He conceded that it would have been impractical to require LP & L to relocate this old pole, but he reiterated that a protective barrier should have been added. He also conceded that, even if there had been a protective barrier, the impact might still have been severe enough to cause injury. "[W]here you can't move [the poles] to the distance that modern standards would call for then the barrier is the accepted substitute." Ideally, every pole along Airline Highway should have a barrier in his opinion.
Robert P. Roth, Jr., the state's district maintenance engineer, testified in his deposition that the maintenance of this pole is LP & L's responsibility and that there had never been a complaint about the poles in the area of the accident.
Based upon this evidence, and the arguments of counsel at hearing on the *439 motion for summary judgment, we believe there are four factors which make this case inappropriate for resolution on summary judgment: (1) LP & L and DOTD have each argued that the other is responsible for the placement of any barrier by this pole; (2) LP & L has failed to establish that there were no previous accidents involving this pole or that it had no knowledge of a dangerous condition involving this pole; (3) there is some evidence that placement of a barrier might have prevented serious injury, although it is clear that it would not have prevented a collision; and (4) it is unclear whether Mr. Mayoral was at fault in responding to this sudden emergency.
We have previously held similar factual issues "of enough substance to defeat summary judgment." Hamrick v. Occidental Chemical Corp., 606 So.2d 5 (La.App. 1992). In the Roux case, supra, where we ruled the other way, the Supreme Court reversed us, holding the summary judgment "inappropriate because the mover failed to establish by sufficient undisputed facts its entitlement to judgment as a matter of law."
LP & L cites several cases in support of its position, but the great distinguishing feature of those cases is that they were resolved at trial, not by summary judgment. See Campo v. Louisiana Power and Light Co., 560 So.2d 966 (La.App. 1st Cir.1990), writ denied 566 So.2d 396 (La. 1990); Perkins v. State Dept. of Transp. & Dev., 515 So.2d 553 (La.App. 1st Cir.1987), writ denied 515 So.2d 1114 (La.1987); Paige v. Commercial Union Ins. Co., 512 So.2d 507 (La.App. 3rd Cir.1987), writ denied 513 So.2d 823 (La.1987); and Armand v. La. Power & Light Co., 482 So.2d 802 (La.App. 4th Cir.1986), writ denied 484 So.2d 669 (La.1987). As noted in Vigreaux v. Dept. of Transp. & Dev., 535 So.2d 518, 519 (La.App. 4th Cir.1988), writ denied 540 So.2d 329 (La.1989), which involved a driver who hit a utility pole while swerving to avoid another car, "The greatest distinction between the Armand case and the present one is that Joni Armand had the opportunity to present her case before a jury at trial. To uphold the granting of NOPSI's summary judgment in this matter precludes plaintiff from that opportunity."
The Supreme Court set forth the duty/risk analysis formula in Molbert v. Toepfer, 550 So.2d 183, 184 (La.1989). In applying the formula to the facts in this case, we must ask ourselves: (1) was the failure to place a barrier near the pole a cause-in-fact of either Mr. Mayoral's collision with the pole or Mrs. Mayoral's serious injuries? (2) did LP & L have a duty to protect the Mayorals from a collision arising from his response to a sudden emergency? and (3) did LP & L breach that duty? When we closely scrutinize LP & L's evidence and indulgently treat that of the Mayorals, we conclude that the Mayorals have raised issues of fact which are entitled to a hearing.
We reverse the summary judgment in favor of Louisiana Power and Light Company and against Rene and Victoria Mayoral and remand this case for further proceedings.
REVERSED AND REMANDED.